UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| BABCOCK & WILCOX SOLAR ENERGY, INC., fka Fosler Construction Company Inc. 1200 East Market Street Suite 650 Akron, Ohio 44305  Plaintiff,  vs.  LUKE A. FOSLER 8833B Midvale Avenue North Seattle, Washington 98103  Defendant. | Case No.: 5:24-cv-00287  JUDGE  COMPLAINT  (Jury Demand Attached) |

Plaintiff Babcock & Wilcox Solar Energy, Inc., by and through the undersigned counsel, for its complaint against Defendant Luke A. Fosler ("Luke"), states as follows:

### INTRODUCTION

1. In September 2021, Luke was ready to cash out from the family business that bore his surname: Fosler Construction Company Inc. (the "Company"). At that time, Luke's brother and sole owner of the Company, Paul Fosler ("Paul"), was finalizing the terms of a deal to sell a majority interest in the business to Babcock & Wilcox New Energy Holdings, LLC (the "Buyer") a subsidiary of Babcock & Wilcox Enterprises, Inc. ("B&W Enterprises" and together with Buyer and their respective subsidiaries and affiliates, "B&W Group"). Under the prospective deal, Luke stood to receive a $1.5 million payment at closing. However, completing the deal required Luke

and other company executives to sign employment agreements with the Company that would secure their employment post-closing and ease the transition of the company to new ownership.

2. On September 28, 2021, Luke signed a two-year employment agreement with the Company, effective upon closing (the "Employment Agreement"). Paul countersigned the Employment Agreement on behalf of the Company the same day. Two days later, on September 30, 2021, the sale of the Company closed, the Employment Agreement became effective, and Luke received his $1.5 million payment.

3. This matter arises because 15 days into his two-year employment term, Luke announced his departure from the Company. Luke's sudden departure to "pursue other passions and interests" violated the terms of the Employment Agreement and demonstrated that Luke had never intended to perform his duties under the Employment Agreement.

**PARTIES, JURISDICTION, AND VENUE**

4. On October 14, 2022, the Company amended its articles of incorporation to change the name of the corporation to Babcock & Wilcox Solar Energy, Inc.

5. The Company is an Illinois corporation with a principal place of business at 1200 East Market Street, Suite 650, Akron, Ohio 44305. The Company provides engineering, procurement, and construction services for solar energy systems.

6. Luke is an individual resident of the State of Washington who resides at 8833B Midvale Avenue North, Seattle, Washington 98103.

7. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the parties are citizens of different states and because there is more than $75,000 in controversy, exclusive of interest and costs. For purposes of establishing diversity jurisdiction, the citizenship

of a corporation is both its State of incorporation and the State where its principal place of business is located. The Company is a citizen of the State of Ohio and Illinois, while Luke is a citizen of the State of Washington.

8. This Court has specific personal jurisdiction over Luke as the Company's claims herein arise from or relate to Luke's purposeful contacts with the State of Ohio. In particular, under the terms of the Employment Agreement, Luke reported to and was supervised by The Babcock & Wilcox Company's Chief Operating Officer, based in Akron, Ohio. Likewise, the Employment Agreement required Luke to follow the commercially reasonable and lawful directives from the Company's Board of Directors, also based in Akron, Ohio. Before and during his period of employment under the Employment Agreement, Luke frequently communicated with Ohio employees of B&W Group. Luke understood and agreed that the Employment Agreement would be governed by and interpreted in accordance with Ohio law. Luke should, therefore, have reasonably anticipated defending against a lawsuit related to the Employment Agreement in Ohio.

9. Venue is proper in this Court as a substantial part of the events or omission giving rise to the Company's claims occurred in this district.

**FACTS COMMON TO ALL COUNTS**

10. The Company incorporates by reference the allegations contained in the preceding paragraphs as though they were fully restated here.

11. Luke began his employment with the Company on June 1, 2017 and served as the company's Vice President of Operations and later as Executive Vice President. Luke's duties as

Executive Vice President included responsibility for operations and all other duties as assigned by the President of the Company.

12. At the time of the Company's sale to the Buyer, Luke was a member of the Company's senior leadership team and its second highest-compensated employee.

13. Luke was instrumental in growing and sustaining the profitability of the Company. Luke maintained an understanding of operational matters and strong relationships with the Company's key customers and vendors and with other employees.

14. In August 2021, Luke was aware that Paul had entered negotiations with B&W Group to sell a majority interest in the Company.

15. Luke was aware that under the terms of the sale, he would receive a $1.5 million payment at closing.

16. Luke was aware that before closing, he was required to execute an employment agreement with the Company in a form that was acceptable to the Buyer.

17. A true and accurate copy of the Employment Agreement is attached and incorporated into this Complaint as Exhibit A.

18. The Employment Agreement became effective on September 30, 2021.

19. Under the terms of the Employment Agreement, Luke agreed to continue to be employed by the Company on a full-time basis as its Executive Vice President. The term of Luke's employment under the Employment Agreement was two years, beginning September 30, 2021.

20. During the term of the Employment Agreement, Luke was able to safely and substantially perform the essential functions of the Executive Vice President position at all times.

21. On October 15, 2021, Luke provided written notification of his intent to resign his employment effective October 29, 2021. Luke unilaterally separated his employment on October 29, 2021.

## COUNT I – BREACH OF CONTRACT

22. The Company incorporates by reference the allegations contained in the preceding paragraphs as though they were fully restated here.

23. The Employment Agreement is a valid and enforceable contract between Luke and the Company.

24. In exchange for valuable consideration, including but not limited to, continued employment, wages, fringe benefits, and access to confidential and proprietary information, Luke agreed to perform all the duties and responsibilities of the Executive Vice President position for the duration of the Employment Agreement. The Company expected and relied upon Luke to perform such duties and responsibilities.

25. The duration of Luke's employment under the Employment Agreement was two years unless terminated earlier by the Company with or without "cause," as that term was defined in the Employment Agreement.

26. The Employment Agreement did not authorize Luke to terminate the Employment Agreement with cause.

27. The Employment Agreement did not authorize Luke to terminate the Employment Agreement without cause.

28. Alternatively, the Employment Agreement permitted Luke to terminate the Employment Agreement without cause provided that he gave the Company not less than 30 days' written notice of termination.

29. Luke terminated his employment less than 30 days into his two-year employment term under the Employment Agreement.

30. Luke did not terminate his employment with cause.

31. Luke did not provide the Company with 30 days' advance written notice of termination of his employment.

32. Luke breached the terms of the Employment Agreement by terminating the Employment Agreement before the two-year term concluded.

33. Alternatively, Luke breached the terms of the Employment Agreement by terminating the Employment Agreement without providing the Company with 30 days' advance written notice of termination.

34. Luke's breach of the Employment Agreement has caused significant financial harm to the Company.

35. Pursuant to Section 19 of the Employment Agreement, the Company is entitled to obtain liquidated damages equal to $166,400 for Luke's breach of the Employment Agreement.

36. As a direct and proximate cause of Luke's breach of the Employment Agreement, the Company has suffered compensatory damages in excess of $2 million and is entitled to recover from Luke such losses in an amount to be proven at trial, plus pre- and post-judgment interest, and costs.

## COUNT II – FRAUDULENT INDUCEMENT

37. The Company incorporates by reference the allegations contained in the preceding paragraphs as though they were fully restated here.

38. Prior to entering the Employment Agreement, Luke represented to the Company that he intended to perform under the terms of the Employment Agreement.

39. Luke knew that his representation was false and acted with reckless indifference to the truth.

40. Luke intended for the Company to rely on his representation, as Luke was aware that executing the Employment Agreement was a precondition to him receiving a $1.5 million payout following the close of the sale of the Company to the Buyer.

41. The Company was unaware that Luke's representation was false, believed the representation to be true, and reasonably and justifiably relied on those representations by entering the Employment Agreement and providing the consideration described.

42. The Company was damaged by Luke's false representation and has suffered compensatory damages in excess of $2 million due to lost profits and other out-of-pocket losses in an amount to be proven at trial, plus punitive damages, pre- and post-judgment interest, attorney's fees, and costs.

**WHEREFORE**, Plaintiff Babcock & Wilcox Solar Energy, Inc. prays that the Court award to Plaintiff a judgment and order against Defendant Luke Fosler as follows:

(a) an award of compensatory damages in a monetary amount in excess of $2 million;

(b) punitive and exemplary damages;

(c) reasonable attorney's fees and costs incurred in the pursuit of this matter;

(d) pre-judgment and post-judgment interest on any award of money damages; and

(e) any other equitable or legal relief that this honorable Court determines to be just.

Respectfully submitted,

/s/ Michael P. Karst
Thomas E. Green (0075022)
tgreen@kwwlaborlaw.com
Michael P. Karst (0091020)
mkarst@kwwlaborlaw.com
KASTNER, WESTMAN & WILKINS LLC
3550 W. Market St., Suite 100
Akron, Ohio 44333
T: (330) 867-9998
F: (330) 867-3786
Attorneys for Plaintiff Babcock & Wilcox Solar Energy, Inc.

## JURY DEMAND

Plaintiff Babcock & Wilcox Solar Energy, Inc. hereby demands a trial by jury on all claims available by law.

/s/ Michael P. Karst
Michael P. Karst (0091020)
Attorney for Plaintiff Babcock & Wilcox Solar Energy, Inc.